Robert WILLIAMSON and Cliff Haydell *v.*
SANOFI WINTHROP PHARMACEUTICALS, INC.

01-345                                    60 S.W.3d 428

Supreme Court of Arkansas
Opinion delivered November 29, 2001

90

*Andrew L. Clark*, for appellants.

*Friday, Eldredge & Clark, LLP,* by: *Kevin A. Crass,* for appellee.

JIM HANNAH, Justice. Appellant Robert Williamson[1] appeals the Pulaski County Circuit Court's decision denying class certification to a group of employees from Sanofi Winthrop Pharmaceuticals, Inc. (Sanofi), the appellee. The trial court found that Williamson could not meet the requirements of establishing commonality and superiority for class certification. We affirm.

This case centers around a bonus program for pharmaceutical sales people. During 1996, Sanofi held a sales promotion known as "Share in the Success." Under the program, sales representatives could earn $1,000, $2,000, or $4,000 bonuses if their sales region exceeded its performance from the previous year. Each of three regions had the opportunity to exceed a budgeted regional growth objective from the prior year in three business units: cardiovascular, injectable, and specialty products. Williamson worked in Central Region-2, which contained approximately sixty-three commissioned sales people.

As part of the program, Sanofi first published a booklet entitled "1996 Sales Incentive Program," which described the program as depending on increased sales as compared to a regional standard.

---

[1] Appellant Cliff Haydell withdrew from the lawsuit as a plaintiff and class representative prior to the hearing on the Motion for Class Certification. He is listed in the style of the case because his name appears on the record. However, we will only refer to Williamson as the appellant class representative in this opinion.

However, throughout the following year as the program was ongoing, Sanofi distributed monthly reports to each salesperson detailing each person's performance for the month, and updating how each region was doing in the program. Sanofi hired the outside firm Simulate, Inc., to prepare the monthly reports. Unfortunately, while the program was created to be based on a "regional" growth objective, Simulate's reports sent to each sales person were based on the national growth objective, which for some was an easier standard to meet. Every one of Williamson's reports indicated that his sales were above the national average and that he was on track to receive the year-end $4,000 bonus. The dispute in this case stems from this series of incorrect reports. While the "Share in the Success" program required a certain increase in regional sales over the year, the reports contained a comparison to the "national" performance for all three business units.

In early 1997, Sanofi notified Williamson and other employees that they would be receiving their incentive payouts on May 15, 1997. In fact, Williamson received a phone call on May 12, 1997, from a manager who told him that he and others would receive the payment. However, before payment was made, Sanofi realized the mistake in the reporting of the program and denied payment. Specifically, Sanofi found that each salesperson's monthly reports tracked his or her sales compared to the national average, but did not track each to the regional growth objective, which was higher than the previous year's national averages in each business group.

Williamson filed a complaint on March 30, 1998, alleging a breach-of-contract claim and asking that the court certify the commissioned sales representatives as a class. Sanofi answered on April 29, 1998, claiming that the class should not be certified, and that Williamson and the other sales people did not qualify for the incentive bonus because they did not meet the projected regional sales requirements. Sanofi also noted that the incorrect monthly reports were prepared by a third party.

On June 28, 2000, Williamson filed a specific motion to certify the class. Sanofi responded on August 16, 2000, arguing that each potential class member was not necessarily in the same position as another because it is unclear whether they each entered into a contract or believed that they entered into a contract merely by raising their sales numbers after the program was started. A hearing was held on this motion on August 21, 2000, at which no witnesses testified. After discussion of the elements to certify a class under Ark. R. Civ. P. 23, the trial court ruled from the bench that he did

not find that there was a common question among the potential class members because each member may have had a different understanding of the incentive program or may have known that the reported numbers were in error. The trial court filed its written order on August 24, 2000, and stated the same. The trial court also found that a class action was not the superior method for adjudicating the claims of the individual plaintiffs. Williamson filed his notice of appeal on September 22, 2000.

On appeal, Williamson lists the six Rule 23 requirements for certifying a class, and argues that the trial court erred in failing to certify the class due to a lack of commonality in claims by the potential class members. While he lists all six Rule 23 requirements to satisfy class-action status, he offers little if any argument for the other five elements. On the commonality issue, Williamson argues that the questions of law and fact are similar for each potential class member as they each qualified for the incentive program, they are all employees of Sanofi, and none of them received payment under the program. Williamson argues that merely by increasing sales, each potential class member accepted the "offer" proposed by Sanofi so that a contract was formed. Sanofi responds that this case does not lend itself to a class action because it requires each sales person to establish that he or she believed that the program had changed so that the national performance numbers replaced the regional performance numbers. Sanofi argues that the bar graphs in the graphic comparisons mailed to each employee demonstrated that the region did not meet the regional sales growth criteria, although the narrative above the graph indicated that the sales were compared to the national performance for each product. Because of this, Sanofi argues that each employee's understanding of the program and how and whether it applied to him or her is an individual question the court would have to ask each person to determine if each person thought a contract was formed. Therefore, the action is not proper as a class action.

The issue before this court is only one of class certification. In our review of a trial court's decision to grant class certification, we have said that trial courts are given broad discretion in matters of class certification, and we will reverse the trial court's ruling only when the appellant can demonstrate an abuse of that discretion. *BPS Inc. v. Richardson*, 341 Ark. 834, 20 S.W.3d 403 (2000); *Baker v. Wyeth-Ayerst Laboratories Division*, 338 Ark. 242, 992 S.W.2d 797 (1999); *Seeco, Inc. v. Hales*, 330 Ark. 402, 954 S.W.2d 234 (1997); *Mega Life & Health Ins. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997). Although we do not delve into the merits of the underlying

claims in a potential class–action case, we will review the trial court's order to determine whether the requirements of Rule 23 are satisfied. *BPS, Inc., supra.*

■■ On the merits, Rule 23 of the Arkansas Rules of Civil Procedure details the requirements for a class–action suit. It states:

> (a) One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this section may be conditional and it may be altered or amended before the decision on the merits.

This court has reviewed the provisions of Rule 23 on numerous occasions and has held that in order for a class–action suit to be certified six factors must be met. Specifically, the party seeking certification must establish: (1) numerosity; (2) commonality; (3) predominance; (4) typicality; (5) superiority; and (6) adequacy. *BPS Inc., supra.* When the court reviews a class–action certification, it will review the trial court's analysis of the factors upon which certification must be based. Specifically, the court has held that:

> [W]hether to certify a class "is not 'whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 . . . are met.' " As we observed, "it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action. . . ." *Id.* "[A]n order denying or granting class certification is separate from the merits of the case."

*Direct Gen. Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997) (citing *Farm Bureau Mutual Ins. Co. v. Farm Bureau Policy Holders*, 323 Ark. 706, 918 S.W.2d 129 (1996)).

■ Rule 23(a)(2) of the Arkansas Rules of Civil Procedure requires a determination by the trial court that "there are questions of law or fact common to the class." *See also, Mega Life, supra.* A review of our case law reveals that this requirement is case-specific. Professor Newberg's treatise on class actions explains that:

> [T]he common question prerequisite is interdependent with the notion of joinder impracticability under Rule 23(a)(1). Consideration of the common question issue requires an answer to the question: Common to whom?"

> * * *

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the rule 23(a)(2) prerequisite is . . . that is there need be only a single issue common to all members of the class. . . . When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

Herbert B. Newberg, *Newberg on Class Actions*, § 3.10 (3d ed. 1993). The trial court must determine what elements in a cause of action are common questions for the purpose of certifying a class.

■ Several Arkansas cases have dealt specifically with the commonality issue in a class-action certification appeal. In *Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995), this court found that the commonality requirement was satisfied where the class's main claim, which applied to every member of the class, was that Cheqnet violated the Fair Debt Collection Act by collecting $10 more than it was allowed to collect on returned checks. In *MegaLife, supra*, the court found that commonality was established through four common questions dealing with the applicability of insurance to the class members. The court found that "if these issues are resolved in favor of the class, the individual members will have suffered a common injury of paying premiums for a void insurance policy." *MegaLife*, 330 Ark. at 271. And, in *Farm Bureau Mutual Insurance, supra*, this court again found that the commonality

issue was satisfied where the class members alleged that a statutory violation occurred when they all had to pay "membership dues" to the Farm Bureau Federation before insurance policies would be issued. In each of these cases, this court found that the defendant's act, independent of any action by the class members, established a common question relating to the entire class to certify the matter as a class action. In this case, however, Sanofi's actions cannot give rise to a cause of action for breach of contract without the prerequisite of the creation of a contract, which necessarily requires each plaintiff to show that a contract was formed between Sanofi and himself. Therefore, before even reaching any common question about breach of contract, each potential class member would have to establish the existence of a contract between himself and Sanofi before ever reaching the issue of whether that contract was breached. This does not lend itself to a class action, and distinguishes this action from those grounded in fraud or misrepresentation.

The same holds true in *BNL Equity Corp. v. Pearson,* 340 Ark. 351, 10 S.W.3d 838 (2000), and *Seeco, Inc., supra,* in which this court certified the class after a finding that common issues predominated over individual issues. Again, in *BNL Equity,* this court affirmed the trial court's certification of the class in a case involving an alleged violation of the Arkansas Securities Act premised on material misrepresentations to stockholders in two public offerings. The court found that the claim of misrepresentation was the "common linchpin" of every class member's case, and that this claim predominated over possible individual issues of establishing each class member's knowledge and any affirmative defenses. In *Seeco, Inc.,* this court found that common issues existed in the class members's claims of fraud even though the elements of reliance and diligence would be issues to be decided on a person-by-person basis. In coming to this conclusion, the court stated, "The overarching issue which must be the starting point in the resolution of this matter relates to the existence of the alleged scheme" by Seeco, Inc., and others to perpetrate a fraud on royalty owners. *Seeco, Inc.,* 330 Ark. at 414. In these two cases, this court found that the allegations of fraud, being separate and apart from any other issues of personal reliance on those representations, were common questions applicable to every class member. Such is not the case here, however, where the potential class's claim is that of breach of contract rather than fraud or misrepresentation, a distinction which is the determining factor in this case.

Here, Williamson's theory, as the trial court noted, is that a contract was formed when Sanofi offered the incentive program and each salesperson increased his or her sales in response. While we will not consider the merits of the underlying lawsuit, *see Advance America v. Garrett*, 344 Ark. 75, 40 S.W.3d 239 (2001); *see also Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 5 S.W.3d 423 (1999) (holding that trial court may not consider whether plaintiff will ultimately prevail), consideration of the elements of the underlying claim is important to determine whether any questions are common to the class and whether those questions will resolve the issue. *See, e.g., Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65 (D.N.J. 1993). The potential class members allege that Sanofi breached a contract with them. The essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Foundation Telecommunications v. Moe Studio*, 341 Ark. 231, 16 S.W.3d 531 (2000); *Gentry v. Hanover Ins. Co.*, 284 F. Supp. 626 (D.C. Ark. 1968) (cited in *Hunt v. McIlroy Bank & Trust*, 2 Ark. App. 87, 616 S.W.2d 759 (1981)). *See also, Southern Surety Co. v. Phillips*, 181 Ark. 14, 24 S.W.2d 870 (1930). We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators. *Crain Industries, Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991), *Hunt, supra* (citing *Hanna v. Johnson*, 233 Ark. 409, 344 S.W.2d 846 (1961); *Irvin v. Brown Paper Mills Co.*, 52 F. Supp. 43 (D.C. Ark. 1943), rev'd. on other grounds, 146 F.2d 232 (8th Cir. 1944)). These very requirements make a class action on a breach-of-contract claim difficult, indeed, as the element of a "meeting of the minds," for example, necessarily requires an individual inquiry into each party's understanding of the terms of the alleged contract, even using an objective standard. *See Crain Industries, Inc., supra.* This is different than a fraud or misrepresentation claim wherein a defendant's fraudulent activity, standing alone, may give rise to a cause of action without any overt act by the plaintiff. That is not to say that a contract claim can never be certified as proper for a class action — should the case arise where a contract or contracts exist, and it is the actual breach of the established contract or contracts that is before the court, perhaps the class certification could survive. However, that is not the case here where the initial inquiry in the

case turns on whether Sanofi created a contract with each salesperson, requiring inquiry into whether the elements of the creation of a contract with each salesperson are met.

As Sanofi argues and as the trial court pointed out, while there may be questions that apply to all the potential class members, the questions on which the case turns are not common to each class member. For example, Williamson supplied in his brief a list of ten questions that he argues are common to all the potential class members, and he is right. However, none of these questions contain the issues on which this case turns. For example, he notes that a common questions is "Did the appellee pay the incentive bonus?" Clearly, the answer for all potential class members is "No." But the case does not turn on that question. It would be the same if Williamson listed a common question as "Do all the plaintiffs speak English?" Again, the answer presumably would be "yes" for all class members, but the question would get us no further in determining the outcome of the case. Rather, the trial court pointed out that the appropriate common questions for this case would include inquiries such as "Did you, the employee, believe a contract was created under the initial incentive brochure or the monthly update reports?" and "Did you, the employee, meet the sales requirements to qualify under either the initial brochure or the monthly update reports?" These are the common questions. However, they cannot be asked *en masse* under these facts, but rather must be asked to each individual class member, thus making the case improper for class certification under the commonality or superiority prongs of the class-action inquiry.

██ Rule 23 of the Arkansas Rules of Civil Procedure is comparable to Rule 23 of the Federal Rules of Civil Procedure, and this court interprets our Rule 23 in the same manner as the federal courts interpret the federal counterpart. *Farm Bureau Mut. Ins. Co., supra.* As such, federal cases can offer guidance on this issue. In *R. W. Brooks, et al. v. Southern Bell Telephone & Telegraph Co.,* 133 F.R.D. 54 (S.D. Fla. 1990), the District Court found that a class should not be certified in a breach-of-contract case due to a lack of commonality in the issues. The court stated:

> Here, each prospective class member's proof of the existence and terms of his contract, and any modifications thereto, will necessarily rest on different sources. The uncommonality of fact among the putative class members on this issue is exemplified by the uncommonality of fact among the named representatives.

*R. W. Brooks,* 133 F.R.D. at 57. In that case, as here, not only were there written documents alleged to be written contractual terms, there were also instances of oral representations by Southern Bell's representatives regarding the alleged agreement between the company and its employees. Such is the case here where the potential class representatives were given varying documents detailing the terms of the incentive program, documents which contradicted one another, but there were also oral representations made to Williamson that may or may not have been made to other potential class members. As in the *R. W. Brooks* case, whether and what terms might have existed and on which terms and representations each class member relied is an individual fact question that is not common to each member of this potential class.

In another federal case, *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.,* 149 F.R.D. 65 (D.N.J. 1993), the District Court entertained a class–action certification appeal from Liberty Lincoln Mercury, a car dealership and proposed class representative for other dealerships subject to Ford's warranty reimbursement practices. The District Court denied class certification in a franchise practices lawsuit in part because the court did not find a commonality of issues. The court stated:

> When the resolution of a common legal issue is dependent upon factual determination that will be different for each purported class plaintiff (and in this instance for each part sold), courts have consistently refused to find commonality and declined to certify a class. (Citations omitted.)

* * *

> In sum, given the individual proof necessary to establish Ford's liability with respect to each individual Dealer and for each individual sale and part, the commonality requirement of Rule 23(a)(s) is not met.

*Liberty Lincoln Mercury, Inc.,* 149 F.R.D. at 76. Here, too, the court would be required to take proof from each class member to determine his or her understanding about the existence of a contract, whether the class member believed a contract existed between him or her and Sanofi, what the terms of that understanding were, whether each class member believed he or she had "accepted" an offer, assuming an offer was made, and whether any other oral representations had been made to him or her as they purportedly

had to Williamson. All of these questions render a class action impractical due to the lack of common questions among the potential class members.

Furthermore, because these questions cannot be asked *en masse*, it also renders a class action improper because it is not the superior manner in which to handle this case. Rule 23(b) of the Arkansas Rules of Civil Procedure requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. *See Seeco, Inc., supra.* We have held that the superiority requirement is satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. *Baker, supra.* Where a cohesive and manageable class exists, we have held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *Seeco, supra; see also Summons, supra.* We further note that when a trial court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the trial court to evaluate the manageability of the class. *See BNL, supra.* Under this requirement, because the trial court would have to hear each class member's testimony regarding his or her understanding about which incentive-program paperwork applied, the regional requirements or the national requirements, as well as consider all of the evidence from each plaintiff regarding whether he or she agreed to a contract by virtue or his or her sales performance, a class action could not be a superior method of handling this case.

Finally, we reiterate that this court reviews class-action certifications or denials under an abuse-of-discretion standard, and we will not reverse the trial court's decision unless the appellant can demonstrate that the court abused its discretion in reaching its decision. Here, we cannot say that the trial court abused its discretion in denying class certification to Williamson where Williamson's initial hurdle of proving that each sales person made a contract with Sanofi would require the trial court from the outset to splinter its inquiry among every potential class member. This necessarily defeats class certification for lack of a common question and because this is not a superior method to resolve this conflict.

Affirmed.