Cite as 2017 Ark. 36

# SUPREME COURT OF ARKANSAS

No. CV–16–284

| | |
|---|---|
| CITY OF CONWAY, AN ARKANSAS MUNICIPALITY<br><br>APPELLANT<br><br>V.<br><br>RICHARD SHUMATE, JR., AND DAMON REED, ON BEHALF OF THEMSELVES AND ALL OTHER SIMILARLY SITUATED PERSONS AND ENTITIES<br><br>APPELLEES | Opinion Delivered: February 16, 2017<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CV-2012-855]<br><br>HONORABLE TROY B. BRASWELL, JR., JUDGE<br><br><br><br>AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

A class of police officers and firefighters brought a class-action complaint against their employer, the City of Conway. The class alleged that the City breached its employment contract with them when it failed to allocate sales-tax revenues to fund salary increases. The issue before us now is the circuit court's order certifying the class action. The City has appealed from this order, arguing that individual issues render a class action impractical. We reject this argument and hold that the circuit court was within its discretion when it certified the class.

I.    *Facts and Procedural Background*

This is an appeal from a class-certification order. The underlying class-action complaint was filed by a fireman and a police officer against the City of Conway. The first

11

named plaintiff was Richard Shumate, a member of the Conway Police Department since 2007. The second named plaintiff was Damon Reed, a member of the Conway Fire Department since 1994. The dispute stems from a sales-tax resolution passed by Conway voters in 2001. Revenue from this tax, plaintiffs allege, was intended to exclusively fund the salaries of city employees. The City established a pay grid to implement and codify the improved salary structure. The parties stipulated that the City gave raises pursuant to the pay grid from 2001 to 2009 but that no increases have been paid since 2009.

The crux of this case arises from the plaintiffs' allegation that the City has failed to exclusively allocate the revenues from the sales tax to fund employee salaries. Plaintiffs allege that the City provided police and fire employees with packets that outlined the pay-grid structure that had been implemented under the resolution. Plaintiffs allege further that the pay grid became part of their employment contract. Thus, plaintiffs allege, old employees were induced to stay with the City and new employees were induced to join based on the pay-grid structure. Once the City stopped funding the increases in 2009, plaintiffs alleged the City breached its contract with its employees.

Plaintiffs' class-action complaint, therefore, was one for breach of contract. At a hearing on class certification, the circuit court certified the following class:

> All City of Conway Policemen and Fireman (excluding department heads and elected officials) who were employed by the City of Conway during the period commencing December 1, 2001 through December 31, 2012 (the "Class Period").

Shumate and Reed were named the class representatives. Further, the court found that there were overarching, common questions that could be efficiently determined on a class-wide



basis. The City has appealed from this order under Arkansas Rule of Appellate Procedure–Civil 2(a)(9) (2016).

## II.     *Standard of Review*

The certification of a class action is governed by Arkansas Rule of Civil Procedure 23 (2016). Circuit courts have broad discretion regarding class certification, and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *See Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 285 S.W.3d 634 (2008). When reviewing a class-certification order, we focus on the evidence contained in the record to determine whether it supports the circuit court's conclusion regarding certification. *Asbury Auto. Grp., Inc. v. Palasack*, 366 Ark. 601, 237 S.W.3d 462 (2006). Our focus is "whether the requirements of Rule 23 are met," and "it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action." *Am. Abstract & Title Co. v. Rice*, 358 Ark. 1, 9, 186 S.W.3d 705, 710 (2004). Stated another way, we "will not delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met." *Nat'l Cash, Inc. v. Loveless*, 361 Ark. 112, 116, 205 S.W.3d 127, 130 (2005). Rule 23 imposes six prerequisites for certification of a class-action complaint: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. Ark. R. Civ. P. 23(a), (b); *Philip Morris Companies, Inc. v. Miner*, 2015 Ark. 73, 462 S.W.3d 313.

## III.     *Discussion*

On appeal, the City challenges the circuit court's findings on four of the six prerequisites of a class action. First, the City argues that there are no common questions

because the mutuality element of a breach-of-contract claim, which requires a meeting of the minds between the contracting parties, requires each plaintiff to resolve his or her individual issues *before* reaching any common questions. Second, and related to the first point, the City argues that the common questions do not predominate because liability cannot be established on a class-wide basis because each plaintiff will have a distinct set of operative facts for his or her breach-of-contract claim. Third, the City argues that Reed and Shumate's claims are atypical of those of the class as a whole. And fourth, the City argues that a class action is not a superior method to adjudicate plaintiffs' claims.

A.  Commonality

One of the prerequisites for bringing a class-action complaint is that "there are questions of law or fact common to the class." Ark. R. Civ. P. 23(a)(2). This is the commonality requirement. In discussing commonality, we have often cited the following language:

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the rule 23(a)(2) prerequisite is . . . that there need be only a single issue common to all members of the class. . . . When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

*Philip Morris*, 2015 Ark. 73, at 4, 462 S.W.3d at 316  (quoting Newberg, *Class Actions* § 3.10 (3d ed. 1993)). The circuit court must identify the common elements in a cause of action when certifying a class. *Id*.

Here, the circuit court identified five common issues: (1) whether the sales-tax resolution was a promise to pay employees a salary increase; (2) whether accepting employment was adequate consideration; (3) the length of time the raises were promised;

(4) whether failure to pay the increase was a breach of contract; and (5) the amount of damages. The City takes direct aim at this finding. And for support, it relies heavily and extensively on our decision in *Williamson v. Sanofi*, 347 Ark. 89, 60 S.W.3d 428 (2001).

In *Williamson*, we affirmed a circuit court's denial of a motion to certify a class action on the basis that there were no common questions. There, a class of salesmen alleged that they were wrongfully denied bonuses under an incentive program. The salesmen thought they were entitled to the bonuses based on incorrect reports prepared by a third party and oral representations made by management. As a result, they filed a class-action complaint for breach of contract against their employer.

In affirming the circuit court's finding, we pointed out that "before even reaching any common question about breach of contract, each potential class member would have to establish the existence of a contract between himself and [the employer]." *Id*. at 97, 60 S.W.3d at 433. We noted that the salesmen were each given different and contradictory documents concerning the incentive program and that oral representations had been made to some but not all salesmen. *Id*. at 100, 60 S.W.3d at 435. Thus, in concluding that a class action would be improper, we stated that "the court would be required to take proof from each class member to determine his or her understanding about the existence of a contract." *Id*. Such a procedure rendered the class action mechanism "impractical due to the lack of common questions." *Id*. at 101, 60 S.W.3d at 435.

The City argues that the exact same reasoning should be applied here. Before determining whether the City has breached a contract, it argues, the court must decide whether it and each class member had a "meeting of the minds" sufficient to establish a

5

contract in the first place. For this reason, the City maintains, a class action is improper. In response, the plaintiffs argue that the pay grid in question became part of every city employee's employment contract and that whether that contract was breached when the City stopped making payment is common to all class members.

We agree with the plaintiffs and, accordingly, affirm the circuit court's finding on commonality. Based on various affidavits in the record and the structure of the plaintiffs' complaint, the nature of the dispute here is not as individualized as the one in *Williamson*. According to the affidavit of a former Conway city councilperson, the Conway Human Resources Department provided potential employees with a packet containing the benefits, pay, and other terms of employment. The pay grid was included in this packet. Further, plaintiffs attached 45 affidavits from current and former city employees to their motion for class certification. All of the employees averred that they had been provided the pay grid and advised by the City that the scale represented the pay they would receive. In other words, according to these affidavits in the record, the City treated its employees in a uniform fashion and made similar oral representations to each one.

The City's uniform practice makes this case different from *Williamson*. In other words, the plaintiffs here were able to establish a common question that precedes an individualized inquiry that would otherwise make a class action impractical. Unlike *Williamson*, where the terms of the contract depended on each employee's performance, here there is a common question regarding performance: was accepting the job adequate consideration for the pay grid? This inquiry is the same for every class member.



In conclusion, we emphasize that our standard of review is abuse of discretion. Under this standard, the City must "demonstrate that the court abused its discretion in reaching its decision." *Williamson*, 347 Ark. at 101, 60 S.W.3d at 436. A court abuses its discretion when it acts improvidently, thoughtlessly, or without due consideration. *Bank of the Ozarks v. Cossey*, 2015 Ark. 367, 471 S.W.3d 203. We cannot say that the court abused its discretion here, when it carefully considered the complaint and matters in the record to find that common questions were present.

## B. Predominance

The next issue involves predominance, which "is a more stringent requirement than commonality." *United Am. Ins. Co. v. Smith*, 2010 Ark. 468, at 10, 371 S.W.3d 685, 692. Predominance is a shorthand term for the following requirement from Rule 23(b): "An action may be maintained as a class action if . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." The starting point in examining the predominance requirement is whether a common wrong has been alleged against the defendant. *Kersten v. State Farm Mut. Auto. Ins. Co.*, 2013 Ark. 124, 426 S.W.3d 455. This element can be satisfied if the preliminary, common issues may be resolved before any individual issues. *Asbury Auto.*, 366 Ark. at 610, 237 S.W.3d at 469.

In making this determination, we do not merely compare the number of individual versus common claims. *Philip Morris*, *supra*. Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings if necessary. *Id*. Conducting a trial on the

common issue in a representative fashion can achieve judicial efficiency. *Id*. Thus, the mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members. *Id*.

For support that predominance is lacking in this case, the City directs us to *Union Pacific Railroad v. Vickers*, 2009 Ark. 259, 308 S.W.3d 573, where we reversed a class-certification order. There, class plaintiffs injured in a railroad accident had been induced by Union Pacific employees to sign settlement agreements for less than the full value of their claims. Plaintiffs alleged that Union Pacific's policy violated the deceptive trade practices act. We held that a class action was improper because Union Pacific's liability could not be established on class-wide basis. Specifically, we pointed to the fact that "oral representations made to plaintiffs by Union Pacific's claims representatives in order to broker a settlement would have been different in each case." *Id*. at 18, 308 S.W.3d at 582. Thus, no "one set of operative facts" could establish Union Pacific's liability. *Id*. at 19, 308 S.W.3d at 582.

The City maintains that, as in *Vickers*, no one set of operative facts can establish its liability. It points to the plaintiffs' affidavits, which state that the City made verbal representations regarding the pay grid. Like the plaintiffs in *Vickers*, the City claims, plaintiffs here would have a different factual scenario for each of their claims. The City also points out that there are no other written employment contracts. Thus, the City claims that "personal encounters between the City's representative and City employees contain individualized facts that render the case unsuitable for class treatment."

But the difference between this case and *Vickers* is not hard to see. Each plaintiff in *Vickers* had a different claim to settle that arose from a different set of facts. The first plaintiff was injured in a collision in 2001; the second plaintiff was the father of a person who died in a collision in 1999; and the third plaintiff suffered injuries from a collision in 1998. *Id.* at 1, 308 S.W.3d at 574–75. In addition to this, Union Pacific's "practices varied from class member to class member." *Id.* at 18, 308 S.W.3d at 582. But here, the employees were all subject to the exact same pay grid. And according to their affidavits, the City's practices were identical to each potential class member. Each employee received the same pay grid and was told that it represented his or her salary. Thus, the common question whether the sales-tax resolution was itself a promise to pay, and whether accepting employment was adequate consideration, predominates over any individual issues. We affirm the circuit court on this point.

## C. Typicality

The City also argues that Shumate and Reed's claims are not representative of the class as a whole. The typicality requirement is satisfied if the representative's claim arises from the same wrong allegedly committed against the members of the class. *Seeco, Inc. v. Snow*, 2016 Ark. 444, at 12, ___ S.W.3d ___, ___. When analyzing this factor, we focus on the defendant's conduct and not the injuries or damages suffered by the plaintiffs. *Id.* When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims. *Summons v. Mo. Pac.*

*R.R.*, 306 Ark. 116, 121, 813 S.W.2d 240, 243 (1991) (citing Newberg, *Class Actions* § 3:13).

In challenging the court's typicality finding, the City delves into deposition testimony from Shumate, arguing that his statements cannot possibly support the breach-of-contract claim outlined in the complaint. It does the same for Reed, arguing that his deposition testimony shows that his claim is unlike that of the rest of the class members. The City then asserts that "no one theory under the broad tent of contract law can redress the claim of every member of the putative class."

However, these arguments are wholly irrelevant to our review of the circuit court's typicality finding. As we stated above, the typicality requirement is satisfied regardless of the individual fact patterns that surround Reed's and Shumate's claims. *See Summons*, *supra*. Moreover, the question whether the class action complaint states an adequate legal theory is one that goes directly to the merits. But our focus in interlocutory appeals from class-certification orders is "whether the requirements of Rule 23 are met," and "it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action." *Am. Abstract*, 358 Ark. at 9, 186 S.W.3d at 710. It is clear that Shumate and Reed's claims arise from the same wrong asserted by the class. We therefore hold that the court did not abuse its discretion when it found that Reed and Shumate were typical of the class as a whole.

## D. Superiority

Last, the City argues that a class action is not a superior method to adjudicate the plaintiffs' claims. Rule 23(b) provides that a class action must be "superior to

other available methods for the fair and efficient adjudication of the controversy." *Asbury Auto.*, 366 Ark. at 611, 237 S.W.3d at 469. This court has held that the superiority requirement is satisfied if class certification is the more efficient way of handling the case, and it is fair to both sides. *Id.* In challenging the circuit court's superiority finding, the City largely repeats its arguments regarding lack of commonality and predominance: that is, each plaintiff will have to prove the existence of a contract before the court can address any common issues. We have already rejected this argument in the sections above, so there is no need to repeat that analysis here. And in any event, the superiority requirement is closely related to predominance. *Philip Morris*, 2015 Ark. 73, at 14, 462 S.W.3d at 321.

Moreover, the circuit court found that a class action would be superior because it was efficient to resolve all claims—possibly 200—in one forum. The court stated, "It would not be cost effective for each putative class member to file separate lawsuits." The City complains that, in making this finding, the court therefore failed to "consider fairness to both parties below." Of course, it would also be more cost effective for the City to defend one claim rather than 200. *Cf. Philip Morris*, 2015 Ark. 73, 14, 462 S.W.3d at 321 ("A class action saves [the defendant] the trouble of defending multiple ADTPA claims across the state."). The City will benefit from class-wide adjudication as well. We affirm the circuit court's finding on superiority.

For the foregoing reasons, we affirm the circuit court's class–certification order.

Affirmed.

*Harrington, Miller, Kieklak, Eichmann & Brown, P.A.*, by: *Thomas K. Kieklak* and *R. Justin Eichmann*, for appellant.

*Thrash Law Firm, P.A.*, by: *Thomas P. Thrash* and *Marcus Neil Bozeman*; and *Wood Law Firm*, by: *Russell A. Wood*, for appellees.