Cite as 2019 Ark. 325

# SUPREME COURT OF ARKANSAS

**No.** CV-19-175

| | |
|---|---|
| INDUSTRIAL WELDING SUPPLIES OF HATTIESBURG, LLC; AIRGAS, INC.; AND AIRGAS USA, LLC<br>APPELLANTS<br><br>V.<br>JOHN PINSON AND LARRY MURPHY ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED<br>APPELLEES | **Opinion Delivered:** November 14, 2019<br><br>APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70CV-12-221 ]<br><br>HONORABLE DAVID F. GUTHRIE, JUDGE<br><br><u>AFFIRMED</u>. |

**JOHN DAN KEMP, Chief Justice**

Appellant Industrial Welding Supplies of Hattiesburg, LLC ("Industrial Welding"),

appeals an amended order of the Union County Circuit Court certifying a class pursuant to

Arkansas Rule of Civil Procedure 23. For reversal, Industrial Welding argues that the circuit

court abused its discretion by granting a motion for class certification filed by appellees John

Pinson, Larry Murphy, and all others similarly situated (collectively "employees") because

they failed to meet their burdens of proof as to the commonality, predominance, and

superiority requirements for class certification.[1] We affirm.

---

[1]On April 4, 2019, separate defendants Airgas, Inc., and Airgas USA, LLC (collectively "Airgas"), sent a letter to the clerk of our court stating that they adopted Industrial Welding's brief in full, but Airgas did not file a notice of appeal from the amended order granting class certification. It is well settled that the failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *See Craig v. Carrigo*, 353 Ark. 761, 121 S.W.3d 154 (2003). Thus, we lack jurisdiction to consider the appeal as to Airgas.

The facts of the case are sufficiently set forth in *Industrial Welding Supplies of Hattiesburg, LLC v. Pinson*, 2017 Ark. 315, 530 S.W.3d 854 (*Industrial Welding I*). In short, the employees filed their complaint in the Union County Circuit Court alleging breach of contract and unjust enrichment based on Industrial Welding's failure to compensate them for earned but unused vacation time. *Id.* at 2, 530 S.W.3d at 856. The employees argued that each member of the proposed class worked for Industrial Welding during the 2011 calendar year and earned vacation benefits that were due to be paid in 2012. *Id.*, 530 S.W.3d at 856. The employees also named Airgas as a defendant because Airgas acquired Industrial Welding effective April 1, 2012. *Id.*, 530 S.W.3d at 856.

In support of their claims, the employees relied on several documents, including the section of the "Nordan Smith Employee Policies and Guidelines Manual" that addressed vacation schedules.[2] That section stated that

> [a]n employee becomes eligible for vacation upon completion of twelve (12) months of continuous service with the company.
>
> Each employee earns vacation time as follows:
>
> 1 week after one year of service
> 2 weeks after two years of service
> 3 weeks after ten years of service
>
> . . . .
>
> In addition, if an employee resigns, is laid-off, or is terminated, that employee will be paid for unused earned vacation time for the calendar year of the occurring event.

---

[2]Industrial Welding conducted business under the fictitious name Nordan Smith.

The employees also cited contracts and noncompete agreements between Industrial Welding and one or more of its employees, stating that "[t]he Employee shall be entitled to an annual vacation, as is determined by existing company policy." Additionally, they relied on a March 23, 2012 memo from Industrial Welding stating, "<u>Vacation</u>: 25% of your unused vacation (representing vacation acrued [sic] from January 1 through March 31) will be paid to you on your final Nordan Smith payroll check." Finally, the employees pointed to an April 3, 2012 letter from Airgas to the employees, which stated, "Your earned but unused vacation through March 30, 2012 will be paid out to you by Nordan Smith." Based on these claims and supporting documentation, the employees sought and were granted class-action status. *Id*. at 4, 530 S.W.3d at 857.

In *Industrial Welding I*, we remanded with instructions to enter an order that complied with Rule 23 because the order failed to define the class claims, issues, or defenses. *Id*. at 7, 530 S.W.3d at 859. On remand, the circuit court entered an amended order granting class certification. It ruled that

> [t]he class consists of all persons who were employed by Industrial Welding Supplies of Hattiesburg, LLC on December 31, 2011, were so employed for at least one year prior thereto, and continued to be so employed until Industrial Welding Supplies of Hattiesburg, LLC was acquired by Airgas USA, LLC on March 31, 2012.

Industrial Welding timely filed an interlocutory appeal from the circuit court's amended order.

I.  *Standard of Review*

Class certification is governed by Arkansas Rule of Civil Procedure 23. *See ChartOne, Inc. v. Raglon*, 373 Ark. 275, 279, 283 S.W.3d 576, 580 (2008). Circuit courts are given broad discretion in matters regarding class certification, and we will not reverse a circuit

3

court's decision to grant or deny class certification absent an abuse of discretion. *Id.*, 283 S.W.3d at 580. When reviewing a class-certification order, we review the evidence contained in the record to determine whether it supports the circuit court's decision. *Id.*, 283 S.W.3d at 580. Our focus is whether the Rule 23 requirements are met, and it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action. *Philip Morris Cos., Inc. v. Miner*, 2015 Ark. 73, at 3, 462 S.W.3d 313, 316. This court will not delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met. *Nat'l Cash, Inc. v. Loveless*, 361 Ark. 112, 116, 205 S.W.3d 127, 130 (2005). The six requirements for class-action certification, as stated in Rule 23, are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *See Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 42, 285 S.W.3d 634, 637 (2008).

## II. *Points on Appeal*

Industrial Welding contends that the circuit court's decision to grant the employees' amended motion for class certification should be reversed because, on their claims for breach of contract and unjust enrichment (1) they failed to meet their burden of proof as to the commonality requirement; (2) individual issues predominate over any common issues, and therefore, they failed to meet their burden of proof as to the predominance requirement; and (3) a class action is not the superior means of resolving their contractual dispute with Industrial Welding.

## A. Breach–of–Contract Claim

### 1. *Commonality*

Industrial Welding argues that the circuit court abused its discretion in finding that the employees met the commonality requirement because its liability to any individual employee turns on whether there was an enforceable contractual obligation concerning vacation time between it and that employee. The employees contend that the circuit court did not abuse its discretion because the issue of contractual liability is common to all class members.

Rule 23(a)(2) requires the circuit court to determine whether there are questions of law or fact common to the class. *Union Pac. R.R. v. Vickers*, 2009 Ark. 259, at 8, 308 S.W.3d 573, 578. Under our case law, this requirement is case-specific. *Id.* Additionally, we have held that

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the rule 23(a)(2) prerequisite is . . . there need be only a single issue common to all members of the class . . . When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

*Id.* at 7, 308 S.W.3d at 578. Commonality is satisfied when the defendant's acts, independent of any action by the class members, establish a common question relating to the entire class. *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2017 Ark. 162, at 7, 519 S.W.3d 291, 297.

In *Williamson v. Sanofi Winthrop Pharmaceuticals, Inc.*, 347 Ark. 89, 96, 60 S.W.3d 428, 432 (2001), on which Industrial Welding relies extensively, we affirmed the denial of a class certification in a breach–of–contract case because of a lack of commonality. *Id.* at 97, 60 S.W.3d at 433. There, a group of salesmen alleged that they had been wrongfully denied

bonuses under an incentive program. The salesmen's claim of entitlement to bonuses was based on incorrect reports prepared by a third party and oral representations made by management. The salesmen filed a class-action breach-of-contract complaint against their employer. *Id.*, 60 S.W.3d at 433.

In affirming the circuit court's refusal to certify the class because it lacked commonality, we reasoned that "before even reaching any common question about breach of contract, each potential class member would have to establish the existence of a contract between himself and [the employer.]" *Id.* at 97, 60 S.W.3d at 433. Each salesman was given different and contradictory documents concerning the incentive program, and oral representations had been made to some but not all salesmen. *Id.* at 100, 60 S.W.3d at 435. In concluding that a class action would be improper, we stated that "the court would be required to take proof from each class member to determine his or her understanding about the existence of a contract." *Id.*, 60 S.W.3d at 435. Such a procedure rendered a class action "impractical due to the lack of common questions." *Id.* at 101, 60 S.W.3d at 435.

In *City of Conway v. Shumate*, 2017 Ark. 36, 511 S.W.3d 319, we again analyzed commonality in a breach-of-contract action. There, a police officer and a firefighter filed a class-action suit against the City, claiming that revenue from a 2001 sales-tax resolution was intended to exclusively fund the salaries of city employees. *Id.* at 2, 511 S.W.3d at 322. The City established a pay grid to implement and codify the improved salary structure and gave raises pursuant to the pay grid from 2001 to 2009 but paid no increases since 2009. *Id.* at 2, 511 S.W.3d at 322. The circuit court found a common issue was whether the City's failure to pay the increase was a breach of contract. *Id.* at 5, 511 S.W.3d at 324. In rejecting the

City's reliance on *Williamson*, we held that, "[b]ased on various affidavits in the record and the structure of the plaintiffs' complaint, the nature of the dispute here is not as individualized as the one in *Williamson*." *Id*. at 6, 511 S.W.3d at 324. All of the employees in *Shumate* averred that they had been provided the pay grid and advised by the City that the scale represented the pay they would receive. *Id*., 511 S.W.3d at 324–25. In other words, "the City treated its employees in a uniform fashion and made similar oral representations to each one." *Id*., 511 S.W.3d at 325. Thus, the plaintiffs were able to establish a common question that preceded an individualized inquiry that would otherwise make a class action impractical. *Id*., 511 S.W.3d at 325. Unlike in *Williamson*, where the terms of the contract depended on each employee's performance, there was a common question regarding performance: "was accepting the job adequate consideration for the pay grid? This inquiry [was] the same for every class member." *Id*., 511 S.W.3d at 325.

In the present case, the circuit court determined that a common question existed, finding that

> Plaintiffs' [sic] allege that Industrial Welding Supplies of Hattiesburg, LLC failed to compensate the Lead Plaintiffs and each Class member for vacation benefits earned in calendar year 2011 but which were never received on account of the agreement between Industrial Welding Supplies of Hattiesburg, LLC, Airgas USA, LLC and Robert O. Tatum that resulted in the cessation of the Class members' employment with Industrial Welding Supplies of Hattiesburg, LLC. The alleged facts surrounding Industrial Welding Supplies, LLC's failure to pay the compensation owed for the referenced vacation benefits are common to all Class members, and all Class members allegedly have been harmed in the same manner. Defendants argue, for the first time in the hearing on this motion and not in their brief, that questions concerning the terms of employee contracts and/or non-compete agreements are not identical and present different issues with respect to the nature and extent of the claims of various class members. Plaintiffs counter that any such differences, if there are any of significance, can be addressed through utilization of subclasses. The Court agrees with Plaintiffs that the allegations as to the compensation owed are common to all putative class members and that the harm to them is of the same essential character.

If facts should develop which support the creation of subclasses or bifurcation, that issue may be taken up at that time.

We agree with the circuit court's commonality finding because the employee manual and the 2012 memo detailing payment for unused vacation days are more akin to the pay grid in *Shumate*. The terms of Industrial Welding's contractual obligation do not depend on each employee's performance. In fact, Industrial Welding's president, Amy Miller, acknowledged in her deposition that all its employees were treated the same with respect to when they earned vacation time and when they either took it or were compensated for it. Thus, we hold that the circuit court did not abuse its discretion by finding that the employees have established a common question that precedes an individualized inquiry that would otherwise make a class impractical. To the extent that employee contracts and noncompete agreements vary amongst class members, we agree with the circuit court that such differences, if there are any of significance, can be addressed through utilization of subclasses. *See, e.g.*, *Ark. Media, LLC v. Bobbitt*, 2010 Ark. 76, at 9, 360 S.W.3d 129, 135 (holding that "general defenses asserted against putative class representatives may be just as applicable to other members of the class and may warrant the establishment of subclasses" but they do not "defeat the initial inquiry"). Accordingly, we affirm the circuit court's commonality ruling.

### 2. *Predominance*

Industrial Welding next contends that because its liability, if any, to each member of the proposed class must be established on a case-by-case basis, the employees failed to submit any proof that common questions of law and fact predominate over individual questions.

Predominance is a more stringent requirement than commonality. *See United Am. Ins. Co. v. Smith*, 2010 Ark. 468, at 10, 371 S.W.3d 685, 692. Predominance encompasses a requirement from Rule 23(b) that "[a]n action may be maintained as a class action if . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *Philip Morris*, 2015 Ark. 73, at 5, 462 S.W.3d at 317. The starting point in analyzing predominance is whether a common wrong has been alleged against the defendant. *Id.*, 462 S.W.3d at 317. We have approved a bifurcated approach to the predominance element by allowing the circuit courts to divide the case into two phases: (1) certification for resolution of the preliminary, common issues; and (2) decertification for resolution of the individual issues. *Id.*, 462 S.W.3d at 317.

The predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. *See Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 232 S.W.3d 444 (2006). In making this determination, we do not merely compare the number of individual versus common claims. *Philip Morris*, 2015 Ark. 73, at 5, 462 S.W.3d at 317. Instead, we must decide whether the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings if necessary. *Id.* at 6, 462 S.W.3d at 317. Conducting a trial on the common issue in a representative fashion can achieve judicial efficiency. *Id.*, 462 S.W.3d at 317. Thus, the mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification when there are common questions

concerning the defendant's alleged wrongdoing that must be resolved for all class members.

*Id.*, 462 S.W.3d at 317.

In the case at bar, the circuit court found that

[i]n this case, it is apparent that the common issues of law and fact predominate over any individual issues or defenses. The predominating issue central to this case is whether Industrial Welding Supplies of Hattiesburg, LLC breached the terms of its contracts and/or non-compete agreements and in so doing failed, as obligated, to compensate the members of the proposed Class for vacation benefits earned in 2011. Moreover, it is alleged that Industrial Welding Supplies of Hattiesburg, LLC has been unjustly enriched by its non-payment of the referenced vacation benefits.

Where identical evidence would be proffered by the plaintiffs and proposed class members as to all of the fundamental liability issues, the plaintiffs' interests will be fully aligned with those of the class members they seek to represent. In *Arkansas Blue Cross and Blue Shields* [sic] *v. Hicks*, 349 Ark. 269[, 78 S.W.3d 58] (2002), the Court acknowledged that it has repeatedly recognized that conducting a trial on the common issue in a representative fashion can achieve judicial efficiency. Here, there will be common questions relative to liability, and the questions related to damages will be common, as well. The amount of each individual's damages will likely differ, but the method of calculating them should be the same. Thus, this element of Ark. R. Civ. P. 23(a)(4) is satisfied, as well.

Defendants contend in a general fashion that this case is not well-suited for class treatment, primarily on the unsupported allegation that the contracts or non-compete agreements, which incorporated the employee manual, contained varying language for different employees. However, Defendants have presented no meaningful or persuasive argument that the common issues and questions fail to predominate over individual defenses or issues. Again, the claims of the class members are at their essence the same and more than sufficiently similar to support a class-based treatment of them and any differences which might arise, whether related to varying contract or non-compete terms or something else, can be dealt with through the creation of subclasses. The Court finds that these common questions and issues clearly predominate over whatever individual issues or defenses might be brought forth.

We agree that the issue of whether Industrial Welding breached the terms of its contracts and noncompete agreements predominates because a common wrong has been alleged against Industrial Welding that may be resolved before individual issues or defenses.

10

We are unpersuaded by Industrial Welding's assertion that this case is governed by *Arkansas Department of Veterans Affairs v. Mallett*, 2015 Ark. 428, 474 S.W.3d 861, in which we held that common issues did not predominate over individual issues with respect to overtime pay. In *Mallett*, employees alleged violations of the Arkansas Minimum Wage Act (AMWA) because the Arkansas Department of Veterans Affairs (ADVA) automatically deducted thirty minutes per day from their hours worked to account for meal breaks even though employees were regularly required to work through meal breaks. *Id.* at 1, 474 S.W.3d at 862. We noted that the group of employees there consisted of approximately 150 individuals who held one of more than twenty different positions. *Id.* at 2, 474 S.W.3d at 862. Additionally, the "determination of ADVA's liability under AMWA would require a highly individualized inquiry as to each employee's hours worked during a given week because, if the employee did not work through lunch, and if the employee failed to work more than forty hours in a given work week, there could be no liability on the part of ADVA." *Id.* at 8, 474 S.W.3d at 866.

*Mallett* is distinguishable from the instant case. The individualized inquiries there led us to conclude that there was "no one operative set of facts" to establish ADVA's liability to any given class member. *Id.*, 474 S.W.3d at 866 (citing *Union Pac. R.R.*, 2009 Ark. 259, at 8, 308 S.W.3d at 578). Here, on the other hand, the issue of whether there existed an enforceable obligation to pay the employees for earned, but unused, vacation time is the preliminary issue common to all class members. Because this case involves a preliminary issue common to all class members, predominance is satisfied even if the court must subsequently decertify the class due to individualized damages issues. *Farmers Ins. Co., Inc.*

*v. Snowden*, 366 Ark. 138, 148, 233 S.W.3d 664, 670 (2006). Thus, we hold that the circuit court did not abuse its discretion in finding that the predominance element had been satisfied.

### 3. *Superiority*

Industrial Welding argues that the circuit court erred by finding that the superiority requirement was satisfied. It claims that a class action is not the superior method for adjudicating this case because the circuit court will need to hear the testimony of each class member and consider evidence regarding his or her understanding of the source of the contractual obligation regarding paid vacation time and whether the class member had unused vacation time when Airgas acquired Industrial Welding.

The superiority requirement is satisfied if class certification is the more efficient way to handle the case, and it is fair to both sides. *See Lambert & Lambert Inv'rs, Inc. v. Harris*, 2016 Ark. 24, 480 S.W.3d 138. Real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *Id*. at 7, 480 S.W.3d at 143. When a circuit court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the circuit court to evaluate the manageability of the class. *Id*., 480 S.W.3d at 143. Whether common questions predominate and whether a class action is a superior method of deciding the case are, to a degree, necessarily subjective questions and very much related to the broad discretion conferred on a circuit court faced with them. *See Summons v. Mo. Pac. R.R.*, 306 Ark. 116, 122, 813 S.W.2d 240, 243 (1991).

In this case, the circuit court ruled that

[a] class action is superior to any other available method for the fair and efficient adjudication of this controversy. The superiority requirement is satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. *Baker v. Wyeth-Ayerst Laboratories Division*, 338 Ark. 242[, 992 S.W.2d 797] (1999). Where a cohesive and manageable class exists, real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *SEECO, Inc. v. Hales*, 330 Ark. 402[, 954 S.W.2d 234] (1997). Superiority should be considered satisfied where a class action eliminates the possibility of repetitious litigation, in this case upwards of 150 individual cases and trials on essentially the same question, and provides small claimants with a method of obtaining redress for claims which would otherwise not be feasible for individual litigation due to the relatively small monetary value of the claims. Likewise, a class approach will eliminate the possibility of different and inconsistent results. Here, given that the necessary numerosity is present and commonality and typicality are satisfied, class treatment of these claims is clearly superior to any other method of adjudicating these claims.

We agree with the circuit court that the superiority requirement is satisfied because a class action is the more "fair and efficient" way to adjudicate the case. Here, it was admitted that employees of Industrial Welding were treated the same with respect to when they earned vacation time and when they either took it or were compensated for it. We further agree with the circuit court's rationale that, to the extent that employee contracts and non–compete agreements vary amongst class members, such differences, if there are any of significance, can be addressed through utilization of subclasses, and the class can be decertified after common questions have been litigated, if the circuit court decides it is appropriate to do so. *E.g.*, *Philip Morris*, 2015 Ark. 73, at 11–12, 462 S.W.3d at 320 ("[T]o the extent that causation and reliance require individual inquiries, the circuit court can decertify the class in a bifurcated proceeding.").

Finally, Industrial Welding's assertion that superiority is defeated because "each class member would have to provide testimony and evidence regarding whether they signed [Ann] Rice's April 3, 2012 letter and accepted $3,000.00[,]" appears to be an attempt to

raise a defense and delve into the merits of the breach-of-contract action, which we will not do at this stage. *See Rosenow v. Alltel Corp.*, 2010 Ark. 26, at 9, 358 S.W.3d 879, 886. Thus, we hold the circuit court did not abuse its discretion by determining that class certification is superior to any other method of adjudicating these claims.

## B. Unjust-Enrichment Claim

Industrial Welding argues that the employees also failed to meet the commonality, predominance, and superiority requirements as to their unjust-enrichment claim. Industrial Welding, without additional argument or supporting authority, merely asserts that its commonality, predominance, and superiority arguments "apply to the unjust enrichment claim in equal force as the breach of contract claim." Thus, for the same reasons articulated as to its breach-of-contract claims, we reject Industrial Welding's unjust-enrichment argument. We therefore hold that the circuit court did not abuse its discretion in granting class certification as it relates to the employees' unjust-enrichment claim.

Affirmed.

*Thomas S. Stone*, *Todd Wooten*, and *Carl F. "Trey" Cooper III*, for appellant Industrial Welding Supplies of Hattiesburg, LLC.

*McMath Woods, P.A.*, by: *Charles Harrison* and *Neil Chamberlin*, for appellees.