OLD REPUBLIC SURETY COMPANY *v.* Sharon McGHEE,
Individually and on Behalf of a Class of Similarly Situated Persons

04-704                                      203 S.W.3d 94

Supreme Court of Arkansas
Opinion delivered February 10, 2005

*Taylor & Janis*, by: *Joel Taylor*, for appellant.

*Turner & Turner*, by: *Todd Turner*; and *Peel Law Firm, P.A.*, by: *John Peel*, for appellee.

DONALD L. CORBIN, Justice. Appellant Old Republic Surety Company appeals the order of the Pope County Circuit Court granting summary judgment to Appellee Sharon McGhee, individually and on behalf of a class of similarly situated persons, and ordering the release of surety bonds that Appellant issued for payday lender Russellville Check Express, Inc. Appellant argues that the trial court should have dismissed Appellee's claim because she failed to exhaust her administrative remedies before the Arkansas State Board of Collection Agencies. This case, along with the case of *Staton v. American Manufacturers Mut. Ins. Co.*, No. 04-56,[1] was certified to us from the Arkansas Court of Appeals as presenting an issue of substantial public interest. Our jurisdiction is thus pursuant to Ark. Sup. Ct. R. 1-2(b)(4). We reverse.

---

[1] The *Staton* case, which originated in the Pulaski County Circuit Court, has not yet been scheduled for submission.

The record reflects that Appellant provided a surety bond in the amount of $50,000 for Russellville Check Express ("RCE"), a payday lender licensed under Act 1216 of 1999, the Arkansas Check-Cashers Act, Ark. Code Ann. §§ 23-52-101 to -117 (Repl. 2000 and Supp. 2003). The bond was issued on August 1, 1999.

Appellee filed suit against Appellant on May 27, 2003, seeking release of the bond to satisfy a judgment that she had previously won against RCE. Appellee asserted that she had obtained a consent judgment from RCE on January 8, 2003, in the amount of $191,419.20, and she attached a copy of said consent judgment to her complaint.[2] She also asserted that the judgment entered against RCE was based upon "a violation of the Arkansas usury law and Arkansas Code Annotated §§ 4-51-102, 4-57-105, 4-57-106, 4-57-107 and 4-57-108," and that RCE is unable to satisfy the judgment against it. She asserted further that although she had made demand for the bond, Appellant had willfully failed and refused to comply with the terms of its bond. Finally, she averred that although she had a remedy available from the State Board of Collection Agencies, requiring her to go before the Board on this claim would be futile, because the Board had previously refused her request to release the surety bonds in another action involving Appellant.

Appellant filed a motion to dismiss[3] on June 24, 2003, asserting that the trial court lacked jurisdiction over Appellee's suit, because she had failed to exhaust her administrative remedies before the Board. It contended that Section XXX of the Board's Rules and Regulations specifically provides the procedure for securing release of surety bonds. It contended further that it would not be futile to require Appellee to exhaust her administrative remedies in this case, because the prior action brought by Appellee before the Board was still pending on appeal in the Pulaski County Circuit Court. Appellant argued that Appellee's actions in filing this suit without first obtaining a final ruling on the prior action amounted to forum shopping.

Appellee responded to the motion to dismiss by filing a motion for summary judgment, in which she asserted that she was

---

[2] The copy of the consent judgment contained in this record bears no file mark.

[3] Appellant's motion was actually one for summary judgment. However, during the December 8, 2003, hearing, the parties agreed that Appellant's motion was better characterized as a motion to dismiss.

entitled by law to a release of the surety bond for RCE, because RCE had been found to have violated the usury laws of this state. She stated that she did not have to bring the current action before the Board, regardless of its Rules and Regulations, because the bond itself allowed her to proceed directly against Appellant in court. She also reiterated her position that to require her to go before the Board would be futile, because the Board had previously ruled against her.

A hearing on the motions was held in the circuit court on December 8, 2003. Counsel for Appellant argued that under the Board's rules, Appellee was required to make demand on the Board for release of the surety bond. Counsel also argued that requiring Appellee to exhaust her administrative remedies, even though she had lost on a similar action before the Board, would not be a futile act. Counsel argued that the concept of futility referred to an agency not being able to grant the type of relief sought, but that it did not refer to a situation where the agency had merely ruled against a party in a similar matter. Counsel suggested that not only was the Board specifically empowered to grant the relief requested by Appellee, its power in this matter was exclusive, as both the bond itself and the Boards' Rules and Regulations provide that the surety bond shall be paid over to the Board once it determines that a person has been harmed by the unlawful actions of a payday lender. Thus, to get release of the bond, Appellee must make demand on the Board.

At the conclusion of the hearing, the trial court stated that it would take the matter under advisement until it could review the pleadings and authority submitted by both sides. Thereafter, in an order entered on March 23, 2004, the trial court granted summary judgment to Appellee and denied Appellant's motion to dismiss. The order did not give any particular reason to support the rulings. However, the following statement from the bench reveals that the trial court may have agreed with Appellee's argument that requiring her to seek relief from the Board would be a futile act:

> I want to see what I can find on futile and see how that's addressed. I can certainly see where the plaintiffs don't want to waste time if they know what the outcome is going to be; but I can also see that it's an administrative procedure and even if you know the outcome, you've got to do it. Seems like that is a waste of time as a practical matter but —

For reversal, Appellant argues that the trial court erred in granting summary judgment to Appellee and thereby denying its motion to dismiss. As it argued below, Appellant maintains that the trial court lacked jurisdiction over the case because Appellee failed to exhaust her administrative remedies before the State Board of Collection Agencies. We agree.

The doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed statutory administrative remedy has been exhausted. *Arkansas Prof'l Bail Bondsman Lic. Bd. v. Frawley*, 350 Ark. 444, 88 S.W.3d 418 (2002); *Cummings v. Big Mac Mobile Homes, Inc.*, 335 Ark. 216, 980 S.W.2d 550 (1998). A basic rule of administrative procedure requires that an agency be given the opportunity to address a question before a complainant resorts to the courts. *Id.* The failure to exhaust administrative remedies is grounds for dismissal. *Douglas v. City of Cabot*, 347 Ark. 1, 59 S.W.3d 430 (2001); *Romine v. Arkansas Dep't of Envtl. Quality*, 342 Ark. 380, 40 S.W.3d 731 (2000).

There are, however, exceptions to the exhaustion requirement. For instance, this court has recognized that exhaustion of administrative remedies is not required where no genuine opportunity for adequate relief exists, or where irreparable injury will result if the complaining party is compelled to pursue administrative remedies, or where an administrative appeal would be futile. *Cummings*, 335 Ark. 216, 980 S.W.2d 550; *Barr v. Arkansas Blue Cross & Blue Shield, Inc.*, 297 Ark. 262, 761 S.W.2d 174 (1988). In other words, inadequate or futile administrative remedies need not be exhausted before other remedies are pursued. *Cummings*, 335 Ark. 216, 980 S.W.2d 550.

This court has not heretofore specifically defined what is meant by the term "futile" in the context of the doctrine of exhaustion of administrative remedies. Appellant argues that what is meant by "futile," is something that is legally impractical, like where the agency has no power to grant the relief requested. To support this argument, Appellant relies on the holding in *Cummings*, 335 Ark. 216, 980 S.W.2d 550.

In *Cummings*, the appellants purchased a mobile home from the appellee. They had numerous problems with leaks, which the appellee, Big Mac Mobile Homes, had made several attempts to repair. Following the last unsuccessful attempt, the appellants revoked their acceptance of the mobile home, tendered the mobile

home to Big Mac, and demanded a return of their payments. Big Mac refused the tender, and the appellants filed suit for breach of contract. Big Mac moved to dismiss the suit on the ground that the appellants had failed to exhaust their administrative remedies before the Arkansas Manufactured Home Commission. The trial court granted the motion, but this court reversed on the ground that requiring the appellants to exhaust their administrative remedies before the Commission would be futile. This court explained that under this state's statutes and the Commission's rules, the Commission could only provide a remedy for damages for the actual cost of repairs, but that damages for repairs was not the remedy requested by the appellants. This court then held: "We conclude that when a plaintiff prays for relief that is clearly not available at the administrative level, exhaustion of other available administrative remedies is not required." *Id.* at 222, 980 S.W.2d at 553 (citations omitted).

Appellant also relies on the holding by the court of appeals in *McLane Southern, Inc. v. Davis*, 80 Ark. App. 30, 90 S.W.3d 16 (2002). There, the Arkansas Tobacco Control Board had notified McLane, a cigarette wholesaler, that it was being charged with violating the anti-rebating provisions of the Unfair Cigarette Sales Act. McLane requested a hearing before the Board; however, before the hearing was held, McLane filed suit in circuit court seeking an injunction to prevent the Board from enforcing the anti-rebating provisions of the act and a declaration that the act and the applicable Board regulations were unconstitutional. The trial court dismissed the case for McLane's failure to exhaust its administrative remedies. The court of appeals affirmed. In doing so, it rejected McLane's argument that any action before the Board on the constitutionality of the act's anti-rebating provisions would be futile because the Board's construction of the validity of those provisions was "a foregone conclusion." *Id.* at 41, 90 S.W.3d at 23. The court of appeals held:

> We do not, however, believe that McLane established the futility of its raising the constitutional issues in the administrative proceeding. *Whatever the Board's decision on the matter, McLane would have been able to appeal its decision to the circuit court.* Also, the Board might have interpreted the statute in a manner that favored McLane's position or it might have determined that McLane's conduct did not fall within the terms of the statute.

*Id.* (citation omitted) (emphasis added).

The facts in the present case are different from those in *McLane*, in that the litigant here has previously gone before the Board on a similar case and actually received an unfavorable ruling, as opposed to assuming that an unfavorable ruling would be rendered. However, the logic of *McLane*, that a litigant must pursue available remedies to their final conclusion, including the appeal process, is applicable to this case. Until a litigant pursues the administrative process to its end, it cannot be said that it is futile to exhaust those remedies before filing suit. Even the case relied upon by Appellee, *Zhou v. Guardian Life Ins. Co. of America*, 295 F.3d 677 (7th Cir. 2002), supports this conclusion.

In *Zhou*, the litigant started the administrative process, but did not follow it through to the end before filing suit. The district court dismissed the suit on the ground that he had failed to exhaust his administrative remedies. On appeal to the Seventh Circuit, Zhou argued that requiring him to exhaust his remaining administrative remedies would be futile. The appeals court disagreed, holding:

> [F]or a party to come within the futility exception, he *"must show that it is certain that [his] claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision."* Save for bald allegations and conclusory statements, Zhou has proffered no facts that would lead this court to find that it was a certainty that further administrative appeal would result in a denial of his claim. When a party has proffered no facts indicating that the review procedure that he initiated will not work, the futility exception does not apply.

*Id.* at 680 (citations omitted) (emphasis added). Under this holding, it is not enough for a litigant to begin the administrative process and then abandon it when he or she believes that the unfavorable decision reached by the agency will not be overturned on appeal. The litigant must either follow through to the final conclusion of the administrative process or present facts demonstrating that it is certain that the relief sought will be denied on appeal. *See also Ellingson & Assoc., Inc. v. Keefe*, 410 N.W.2d 857 (Minn. App. 1987) (holding that futility is demonstrated where the administrative agency has *unequivocally committed* itself to a position).

Similarly, the Supreme Court of Washington, in *Citizens for Clean Air v. City of Spokane*, 114 Wash. 2d 20, 785 P.2d 447 (1990), has held that the policies underlying the doctrine of exhaustion of administrative remedies "impose a substantial burden on a litigant

attempting to show futility." *Id.* at 30, 785 P.2d at 453 (citation omitted). There, Citizens sued the city because it had approved the building of a garbage incinerator. During public hearings on a proposed contract, a lawyer for Citizens argued against the proposal, challenging the adequacy of the environmental-impact statement obtained by the city. The city approved the contract. Thereafter, Citizens filed suit. The trial court entered judgment in favor of the city, and Citizens appealed. The Washington Supreme Court affirmed the judgment as to the group's challenge to the adequacy of the environmental-impact statement on the ground that Citizens had failed to exhaust their administrative remedies by appealing the city's decision. In so holding, the court discussed the underlying policies for requiring exhaustion:

> The exhaustion requirement (1) prevents premature interruption of the administrative process; (2) allows the agency to develop the factual background on which to base a decision; (3) allows the exercise of agency expertise; (4) provides a more efficient process and allows the agency to correct its own mistake; and (5) insures that individuals are not encouraged to ignore administrative procedures by resort to the courts.

*Id.* (citing *Estate of Friedman v. Pierce Cy.*, 112 Wash. 2d 68, 768 P.2d 462 (1989); *Orion Corp. v. State*, 103 Wash. 2d 441, 693 P.2d 1369 (1985)). Applying those policies, the court rejected the group's argument that exhaustion would be futile because their appeal of the city's decision would be to the very same body, the city council, that had previously rejected the group's complaints. The appellate court held that Citizens had the burden of proving futility, *i.e.*, that the city's decision would be the same. The court stated: "We will not assume that an appeal focused on specific issues might not have led to changes." *Id.* at 32, 785 P.2d at 454.

■ Based on the foregoing, we conclude that it is not futile to require Appellee to exhaust her administrative remedies before proceeding with her claim in circuit court, even though the State Board of Collection Agencies has ruled against her on a similar claim. As of the date that she filed this suit, Appellee had not pursued her prior claim before the Board to its final conclusion, as that claim was still pending on appeal to the Pulaski County Circuit Court. Thus, she has pursued this claim directly in the Pope County Circuit Court before receiving a final determination on her appeal of the Board's previous decision. Because she

has failed to follow through on her previous claim, and a final determination has not yet been made, it is not futile to require her to exhaust the administrative remedies on her present claim. There is no futility in requiring Appellee to pursue her administrative remedies to their full extent either in the prior case or the present one.

Moreover, Appellee has failed to demonstrate with certainty that the Board's decision would be the same in the present case. We agree with the Washington Supreme Court and the Seventh Circuit that the burden is on the litigant to demonstrate futility. Here, Appellee only demonstrated that the Board had previously ruled against her on a similar claim. Like the Washington Supreme Court, we are not willing to assume that the Board would automatically reject Appellee's arguments were they brought again. As stated above, there are sound policy reasons for allowing the agency to correct any mistakes it may have made in prior decisions. By skipping the crucial step before the Board, Appellee has deprived the agency of the opportunity to correct any mistake it may have made in the previous case. In turn, she has deprived the circuit court of a fully developed record to review.

Additionally, the particular circumstances of this case demonstrate that it is not futile to require Appellee to exhaust her administrative remedies, as it is the Board that is specifically empowered to grant the relief requested by her, *i.e.*, the release of the surety bond. Rule XXX of the Board's Rules and Regulations provides in pertinent part:

A) Each licensee is required to maintain a fifty thousand dollar ($50,000.00) surety bond for the use and benefit of the State of Arkansas and/or for any injured party and to ensure that the licensee shall faithfully perform its duties and obligations pertaining to the business of check cashing and/or deferred presentment services.

B) *If the Board determines, after due process, including proper notice and opportunity to be heard, that the licensee has violated any provision of Act 1216 of 1999 or these Rules and Regulations, it shall collect from the required Surety Bond any monies due and payable to satisfy* any loss or damages suffered by the State including civil penalties and/or *any loss or damages suffered by any persons of the State. Payment on the bond shall be upon the written demand of the State of*

*Arkansas State Board of Collection Agencies.* The above notwith-standing, no monies may be collected from the Bond and/or disbursed pending any administrative and/or judicial appeals.

C) In the event of any loss or damage suffered by any persons of the State, *the [Board] shall proceed to disburse the funds it has collected from the Surety company in accordance with these Rules.* [Emphasis added.]

The remainder of Rule XXX provides for notification to all potential persons harmed by the unlawful actions of the payday lender and for hearings to be held on their claims before the Board determines how to disburse the bond amounts.

In the present case, Appellee is a class representative of similarly situated persons harmed by the alleged unlawful actions of RCE. From the record before us, it cannot be discerned whether any potential class members have opted out of the class. Such persons, however, may also have a claim on the surety bond that Appellee seeks. It would be up to the Board to make a determination as to the amount of disbursement on each claim, after proper notice was given. As such, it was imperative for Appellee to bring her claim before the Board.

■ We find no merit to Appellee's argument that the bond itself specifically allows her to bring an action directly against the surety in circuit court. The bond provides in pertinent part that "the State of Arkansas State Board of Collection Agencies or any person(s) of this State suffering such loss or damages shall have the right to bring an action on this bond against the Principal or Surety." Notably absent from this provision are the words "in circuit court," or "in the courts of this state." Thus, Appellee's argument is misplaced. Indeed, when this provision is read in context with the remainder of the bond, it becomes clear that the "action" against the principal or surety must be brought before the Board, as the bond provides: "That this bond, upon written demand by the State of Arkansas State Board of Collection Agencies *shall be paid and turned over to the State of Arkansas State Board of Collection Agencies* in accordance with the Rules and Regulations promulgated thereunder." (Emphasis added.) Thus, under its own terms, the bond is payable to the Board, not to individual persons, and it is the Board who, under its rules and regulations, disburses the bond to any persons harmed by the unlawful actions of a payday lender.

Finally, we reject Appellee's assertion that the Board lacks jurisdiction to hear her claim, because the decision to release the surety bond turns on a determination that the payday lender, RCE, violated the laws and constitutional provisions pertaining to usury. Appellee supports her argument with a citation to this court's holding in *Luebbers v. Money Store, Inc.*, 344 Ark. 232, 40 S.W.3d 745 (2001). There, the appellant argued that section 23-52-104(b) of the Check-Cashers Act was unconstitutional. That section provided:

> The fee, when made and collected, shall not be deemed interest for any purpose of law, and a check-cashing transaction, including one (1) with a deferred presentment option, shall not be and shall not be deemed to be a loan, loan contract, or a contract for the payment of interest notwithstanding any disclosures required by this chapter.

This court characterized this provision as a declaration by the General Assembly that deferred presentment check-cashing transactions are excluded from the confines of the Arkansas Constitution's usury provisions. This court then concluded that the legislature could not make such a declaration, because the determination of whether a transaction is usurious is one that must be decided by the courts. Accordingly, this court struck down section 23-52-104(b) as violating the constitutional doctrine of separation of powers.

Appellee contends that our holding in *Luebbers* strips the Board of the ability to decide her claim because it touches upon the usury laws of this state. We disagree. The issue in that case was the power to determine whether a transaction was usurious, as between the courts and the legislature, not as between the courts and administrative agencies. Indeed, this court has consistently held that administrative agencies have the power to hear related constitutional issues, and that a litigant must raise such constitutional issues in the agency. *See AT&T Communs. of the S.W., Inc. v. Arkansas Pub. Serv. Comm'n*, 344 Ark. 188, 40 S.W.3d 273 (2001); *Romine*, 342 Ark. 380, 40 S.W.3d 731; *Ford v. Arkansas Game & Fish Comm'n*, 335 Ark. 245, 979 S.W.2d 897 (1998). This court has also recognized the value of allowing the agency to fully develop a record on such constitutional claims. *See AT&T*, 344 Ark. 188, 40 S.W.3d 273.

In the present case, Appellee seeks the release of a surety bond issued by Appellant on behalf of payday lender RCE. Her claim is based upon an alleged order of summary judgment

entered by the circuit court, which contains findings that RCE violated the usury provisions of various state statutes and the Arkansas Constitution.[4] However, the fact that her underlying judgment involves an issue of usury does not alter the fact that the Board is the entity charged with the initial determination of whether to release the surety bond. Because she failed to bring her claim to the Board before filing suit in circuit court, she has failed to exhaust the administrative remedies available to her. Accordingly, we reverse the judgment of the trial court and remand for entry of an order consistent with this opinion.

---

[4] During the December 8, 2003, hearing, the trial court indicated that it had some misgivings about ordering the release of the surety bond based solely on the consent judgment between Appellee and RCE. The court observed that the consent judgment seemed incomplete in that it did not contain specific findings that RCE violated any particular usury laws. Appellee's counsel informed the court that there had also been an order of summary judgment granted against RCE. Counsel then stated that he would provide the court with a copy of that summary judgment. For whatever reason, however, that order does not appear in the record.