Cite as 2020 Ark. 235

# SUPREME COURT OF ARKANSAS

**No.** CV-19-681

| | |
|---|---|
| MUNICIPAL HEALTH BENEFIT FUND **APPELLANT** | **Opinion Delivered:** June 11, 2020 |
| V. | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58CV-17-499] |
| RICKY HENDRIX, INDIVIDUALLY AND ON BEHALF OF ALL ARKANSANS SIMILARLY SITUATED | HONORABLE KEN D. COKER, JR., JUDGE |
| **APPELLEE** | AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Municipal Health Benefit Fund ("MHBF") appeals a Pope County Circuit Court order certifying two classes pursuant to Rule 23 of the Arkansas Rules of Civil Procedure. For reversal, MHBF argues that appellee Ricky Hendrix failed to prove the class-certification requirements of commonality, predominance, superiority, typicality, and adequacy and that the circuit court lacked jurisdiction over the class action. We affirm.

## I. *Facts*

MHBF is a trust created by the Arkansas Municipal League under authority of the Interlocal Cooperation Act, Arkansas Code Annotated §§ 25-20-101–108 (Repl. 2014 & Supp. 2017). MHBF provides benefits to employees of its municipal members. The terms of MHBF's policy booklet apply uniformly to those who receive health-benefit coverage through MHBF, and the policy booklet sets forth the benefits available and MHBF's rights and obligations concerning payment of those benefits.

Hendrix obtained MHBF health-benefit coverage for his family and himself through his employment as a detective with the Russellville Police Department. On May 20, 2016, Hendrix's daughter was injured in a car accident, necessitating treatment from multiple medical-care providers. MHBF denied payment for portions of the bills incurred by Hendrix's daughter based on its interpretation of two exclusionary terms in its policy booklet:

i. [MHBF]'s interpretation of its policy to require an insured to purchase coverage pursuant to [Arkansas Code Annotated] § 23-89-202(1) in conjunction with their automobile insurance coverage or, in the absence of such optional coverage, that the policy entitled the MHBF to coordinate their insurance benefits as if that coverage existed; and

ii. [MHBF]'s position that the medical charges incurred by their insureds can be denied or reduced by the MHBF based on [its] belief that those charges were not "reasonable and customary" under the language (and/or the absence thereof) of the Fund's policy related to this exclusionary term.

Hendrix appealed both above bases for exclusions to MHBF's Board of Trustees. An appeal hearing was held on May 5, 2017, and MHBF ultimately denied his appeal of both bases for exclusion in their entirety.

On December 19, 2017, Hendrix filed his amended class-action complaint, alleging that the two exclusionary terms were so subjective, ambiguous, and misleading that they were unenforceable against the classes. He sought a declaration on the enforceability of MHBF's interpretation of the two exclusionary terms and asserted a failure to pay insurance claims pursuant to Arkansas Code Annotated § 23-79-208 (Repl. 2014) or, alternatively, breach of contract for failure to pay the benefits as agreed.

The circuit court granted Hendrix's motion to certify two classes to pursue the three causes of action asserted in the amended complaint. The two classes included

Class 1:	The auto–insurance class

All individuals and/or entities located and/or domiciled within the State of Arkansas who filed one or more claims with the Arkansas Municipal Health Benefit Fund on and between September 7, 2012 and December 31, 2016 and who had their claim(s) denied or reduced by the MHBF, in whole or in part, on the stated basis that the Fund was coordinating that claim as if the claimant had the "med–pay" coverage addressed by Ark. Code Ann. [ ] § 23-89-202(1).

Class 2:	The reasonable and customary charges or "UCR" class

All individuals and/or entities located and/or domiciled within the State of Arkansas who filed one or more claims with the Arkansas Municipal Health Benefit Fund on or between September 12, 2012 through the date of entry of this Class Certification Order and who had their claim(s) denied or reduced by the MHBF, in whole or in part, on the stated basis that the charges claimed exceed those that are "reasonable and customary."

The circuit court ruled that the class members satisfied the requirements of Rule 23, and it made detailed findings on each of the Rule 23 requirements.[1] MHBF filed a timely appeal from the circuit court's order granting class certification.

## II. *Arguments*

MHBF contends that the circuit court's order granting class certification should be reversed because the classes lacked commonality, predominance, superiority, typicality, and adequacy and because the circuit court lacked jurisdiction over the class action.

Class certification is governed by Arkansas Rule of Civil Procedure 23. *ChartOne, Inc. v. Raglon*, 373 Ark. 275, 279, 283 S.W.3d 576, 580 (2008). Circuit courts are given broad

---

[1]Excluded from both classes were (1) any defendant, any entity in which any defendant has a controlling interest or which has a controlling interest in any defendant, and any defendant's legal representatives, predecessors, successors, and assigns; (2) the judicial officers to whom the case is assigned; and (3) any member of the immediate families of the persons excluded above.

discretion in matters regarding class certification, and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *Id.*, 283 S.W.3d at 580. When reviewing a class-certification order, we review the evidence contained in the record to determine whether it supports the circuit court's decision. *Id.*, 283 S.W.3d at 580. Our focus is whether the Rule 23 requirements have been met, and it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action. *Philip Morris Cos., Inc. v. Miner*, 2015 Ark. 73, at 3, 462 S.W.3d 313, 316. This court will not delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met. *Nat'l Cash, Inc. v. Loveless*, 361 Ark. 112, 116, 205 S.W.3d 127, 130 (2005). The six requirements for class-action certification, as stated in Rule 23, are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 42, 285 S.W.3d 634, 637 (2008).

## A. Rule 23 Requirements

### 1. *Commonality*

MHBF argues that the circuit court abused its discretion in finding that the classes met the commonality requirement because any liability involves an individualized inquiry into the reasonableness of charges. It also asserts that because it is a trust, the Uniform Declaratory Judgments Act does not apply; therefore, relief under the declaratory-judgment claim is foreclosed. And because it is neither insurance nor a contract, any relief on the insurance and breach-of-contract claims is unavailable. MHBF contends there cannot be a common question that will resolve its liability as to the claims against it.

Rule 23(a)(2) requires a determination by the circuit court that "there are questions of law or fact common to the class." *Union Pac. R.R. v. Vickers*, 2009 Ark. 259, at 8, 308 S.W.3d 573, 578. We have held that

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the rule 23(a)(2) prerequisite is . . . [that] there need be only a single issue common to all members of the class. . . . When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

*Williamson v. Sanofi Winthrop Pharms., Inc.*, 347 Ark. 89, 96, 60 S.W.3d 428, 432 (2001) (quotation omitted). Commonality is satisfied when "the defendant's acts, independent of any action by the class members, establish a common question relating to the entire class." *Id.* at 97, 60 S.W.3d at 433.

On commonality, the circuit court's order stated,

> In the case at bar, the Court finds that each of the claims of the proposed classes are, in all material respects, identical to Plaintiff's claim. . . . [T]he claims of every class member here not only turn on a single pattern of conduct by Defendant, but on the Court's interpretation of [a] single document promulgated by Defendant, the MHBF Policy Booklet. The Defendant here has drafted, promulgated, and acted under two uniformly applicable set[s] of policy exclusion terms to reduce and/or deny the health insurance claims of the Class Members. Accordingly, the factual and legal bases of Defendants' alleged liability, as well as the challenged contractual language in the MHBF's Policy from which this alleged liability arises, are common to all members of the Class and represent the core of each common cause of action asserted by the named Plaintiff and the Class members. Such common questions are:
>
> i.      Whether the express terms of the MHBF's Policy, as defined or undefined therein, allow for the application of the insuring exclusions at issue against the members of UCR and Auto Coverage Classes;
>
> ii.    Whether the insuring exclusions applied against the members of UCR and Auto Coverage Classes at issue herein, which were drafted by the MHBF, are subject to ambiguity or more than one reasonable interpretation, and are thus subject to be construed, strictly or otherwise, in favor of the Class Members under Arkansas law;

5

iii.   The MHBF's liability for and the determination of damages, if any, under Ark. Code [Ann.] § 23-79-208, Ark. Code [Ann. §] 16-22-308, and/or Arkansas common, contract and/or statutory law as alleged in the Complaint.

. . . [T]he Court finds that the proposed classes, and the three causes of action asserted by each in the operative complaint, easily satisfy the commonality requirement of Rule 23.

We agree with the circuit court's finding because the claims of the classes' members turn on the circuit court's interpretation of the two exclusions in the MHBF policy booklet. Here, the interpretation and enforceability of those two exclusions will be the same as to all members.

We are unpersuaded by MHBF's reliance on *Williamson*, 347 Ark. 89, 60 S.W.3d 428, a case in which we affirmed the denial of a class certification in a breach-of-contract case based on a lack of commonality. There, we noted that "the court would be required to take proof from each class member to determine his or her understanding about the existence of a contract." *Id.* at 100, 60 S.W.3d at 435. Unlike in the present case, each class member in *Williamson* was given different and contradictory documents concerning the incentive program at issue there, and oral representations had been made to some, but not all, class members. *Id.*, 60 S.W.3d at 435.

Additionally, MHBF's argument that the causes of action against it fail due to its status as a trust goes directly to the merits of the case, and we will not delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met. *City of Conway v. Shumate*, 2017 Ark. 36, at 3, 511 S.W.3d 319, 323. Thus, we hold that the circuit court did not abuse its discretion on its commonality finding.

## 2. *Predominance and superiority*

MHBF argues that neither of the certified classes satisfies the predominance requirement of Rule 23 because the operative complaint alleges an ambiguity in the policy booklet that necessarily involves the mindset of the class members and cannot be resolved on a classwide basis. It further asserts, specifically to the UCR class, that the reasonableness of each out-of-network expense will have to be examined separately. MHBF makes no independent argument about superiority. Instead, it argues that because the circuit court abused its discretion in finding that the classes satisfied the predominance requirement, the circuit court also abused its discretion in finding that superiority had been met.

Predominance is a more stringent requirement than commonality. *Philip Morris*, 2015 Ark. 73, at 5, 462 S.W.3d at 317. Predominance encompasses the requirement that "[a]n action may be maintained as a class action if . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *Id.*, 462 S.W.3d at 317. The starting point in analyzing predominance is whether a common wrong has been alleged against the defendant. *Id.*, 462 S.W.3d at 317. We have approved a bifurcated approach to this element by allowing the circuit courts to divide the case into two phases: (1) certification for resolution of the preliminary, common issues; and (2) decertification for resolution of the individual issues. *Id.*, 462 S.W.3d at 317.

The predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. *Id.* at 6, 462 S.W.3d at 317. In making this determination, we do not merely compare the number of individual claims versus common claims. *Id.*, 462 S.W.3d at 317. Instead, we must decide whether the issues common to all

plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings if necessary. *Id.*, 462 S.W.3d at 317. Conducting a trial on the common issue in a representative fashion can achieve judicial efficiency. *Id.*, 462 S.W.3d at 317. Thus, the mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification when there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members. *Id.*, 462 S.W.3d at 317.

> Here, on the predominance requirement, the circuit court found that
>
> Plaintiff and the proposed class members were affected by the same alleged conduct carried out under the alleged authority of two common exclusionary terms in the MHBF's Policy Booklet. As the evidence presented to the Court makes clear, every time the Fund determines what to pay on a claim under the Policy, it begins by applying the rules and definitions set forth by the Policy Booklet, which apply equally to all Fund members. If Plaintiff succeeds in voiding these exclusionary terms in the Policy Booklet as vague, ambiguous, subjective, or otherwise unenforceable, the change would apply across the entire Class. Conversely, if the Fund prevails and the exclusionary terms remain valid and enforceable, the judgment would have a preclusive effect against any similar challenge by a Class member in the future. Accordingly, the Court finds that the operative questions of law and fact are clearly common to the Class as noted in the preceding sections and predominate over questions affecting only individual Class members. Considering that Plaintiff['s] claim arises from the same Policy terms applicable to all class members, Plaintiff['s] Motion satisfies the predominance requirement of Rule 23.

We agree that the interpretation and enforceability of the two policy exclusions predominate over any individual issues or defenses. Both of MHBF's arguments for reversal fail for the same reason—the same exclusionary terms from the policy booklet were applied to all class members, and a court will determine whether they were enforceable or not as to all class members. *See, e.g.*, *Farmers Union Mut. Ins. Co. v. Robertson*, 2010 Ark. 241, at 13–14, 370 S.W.3d 179, 187–88 (holding that when the operative provisions of homeowners'

policies were identical among the policies issued to the putative class members, the common issue of the insurance company's liability under the contract or policy language predominated, even if the individualized issues of damages later required bifurcation or the creation of subclasses). Additionally, to the extent that MHBF is attacking the merits of the lawsuit, we will not analyze the underlying claims in this class-certification appeal. *City of Conway*, 2017 Ark. 36, at 3, 511 S.W.3d at 323. Thus, we hold that the circuit court did not abuse its discretion in its predominance finding.

Further, because MHBF asserts no independent argument about superiority, we also affirm the circuit court's finding that the classes satisfied the superiority requirement.

3. *Adequacy*

MHBF next challenges the circuit court's adequacy findings, asserting conflicting interests between Hendrix and the UCR class members because the remedy he seeks would deplete MHBF at the expense of current and future fund members. MHBF also asserts that Hendrix's pursuit of this litigation directly opposes the interests of class members against whom claims already are barred by the applicable statute of limitations.

The three elements of the adequacy requirement are (1) the representative counsel must be qualified, experienced, and generally able to conduct the litigation, (2) that there be no evidence of collusion or conflicting interest between the representative and the class, and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision-making as to the conduct of the litigation. *Cach, LLC v. Echols*, 2016 Ark. 446, at 4–5, 506 S.W.3d 217, 221.

In its order, the circuit court found that no meaningful or potential conflict existed between Hendrix and the proposed classes. It ruled that the class members' claims "turn on the Court's interpretation and declaration, under Arkansas law, of the enforceability of two exclusionary terms in the MHBF Policy Booklet which uniformly and equally apply to all class members including but not limited to those of Detective Hendrix and his family."

We agree with the circuit court's determination that there was no meaningful conflict between Hendrix and the proposed classes. First, MHBF's argument—that some potential class members may oppose the class action because an award of damages would deplete the fund and hinder MHBF's ability to provide future health benefits—involves the merits of the case and the amount of damages that Hendrix may be awarded. *See, e.g.*, *SEECO, Inc. v. Snow*, 2016 Ark. 444, at 9–10, 506 S.W.3d 206, 213. That argument does not bar Hendrix from serving as class representative, as the same argument could be made about any potential class representative. *Id.* at 10, 506 S.W.3d at 213. Second, the fact that potential class members may choose to assert a statute-of-limitations defense against creditors' claims rather than risk reviving an expired limitations period on those claims does not demonstrate a conflict because those potential members may elect to be excluded from the class after notice pursuant to Rule 23(c)(2). Thus, we hold that the circuit court did not abuse its discretion in determining that Hendrix has no conflict of interest disqualifying him from representing the classes.

### 4. *Typicality*

For reversal, MHBF does not challenge the circuit court's typicality findings but argues that typicality is defeated because Hendrix is "very likely one of the few where the

10

member pursued an appeal" of MHBF's denial or reduction of payment. It claims that, unlike Hendrix, other class members may be subject to the defense of failure to exhaust administrative remedies.

The typicality requirement mandates that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Ark. R. Civ. P. 23(a)(3). We have addressed typicality as follows:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

*Cach, LLC*, 2016 Ark. 446, at 6–7, 506 S.W.3d at 221–22 (quotation omitted).

Here, on the typicality requirement, the circuit court found that

> typicality is inherent in the class definition, as Plaintiff alleges that the claims of every class member in this case not only turn on a single uniform set of facts, but on the Court's interpretation of a single document, the MHBF's Policy Booklet. The Defendant here admits it has drafted, promulgated, and acted uniformly under two common exclusionary terms in its Policy Booklet as a basis for reducing and/or denying the insurance benefit claims of class members. Accordingly, the factual and legal bases of Defendants' alleged liability, as well as the challenged contractual language in the MHBF's Policy Booklet from which this alleged liability arises, are common to all members of the Class and represent a common cause of action to Plaintiff and the Class members. Accordingly, given the uniform nature of the class claims and the common contractual document that must be interpreted to adjudicate them, the Court finds that [ ] each of the proposed classes and each of their respective causes of action asserted in the operative Complaint satisfy the typicality requirement of Ark. R. Civ. P. 23.

11

We agree that the typicality requirement was satisfied in this case because the exclusionary terms on which any liability rests are common to all members of the respective classes. In other words, the same practice or course of conduct by MHBF is the basis for Hendrix's claims and those made on behalf of the classes. Exhaustion of administrative remedies does not factor into this analysis. Thus, we hold that the circuit court did not abuse its discretion in determining that the typicality requirement had been met in this case.

## B. Jurisdiction

Lastly, MHBF argues that the case should be dismissed for lack of jurisdiction. It claims that Hendrix and other class members were required to complete MHBF's internal-appeal process and, pursuant to Rule 9(f) of the Arkansas District Court Rules, appeal the denial of any MHBF final decisions to the circuit court. MHBF acknowledges that Hendrix completed the internal-appeal process but claims that his failure to appeal to circuit court pursuant to Rule 9, as well as some of the other class members' failures to complete the internal-appeal process, robbed the circuit court of jurisdiction over this case.

We have previously held that, in an interlocutory appeal from a class-certification order, we will hear only arguments on whether the circuit court abused its discretion in certifying the class and finding compliance with the requirements of Rule 23. *Hotels.com, L.P. v. Pine Bluff Advert. & Promotion Comm'n*, 2013 Ark. 392, at 7, 430 S.W.3d 56, 60. We have also stated that a circuit court lacks jurisdiction over a suit where a party has failed to exhaust his or her administrative remedies. *Id.* at 7, 430 S.W.3d at 60. The doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. *Id.*, 430

S.W.3d at 60. The doctrine is subject to numerous exceptions—for example, exhaustion is not required when no genuine opportunity for adequate relief exists or when irreparable injury will result if the complaining party is compelled to pursue administrative remedies. *Id.*, 430 S.W.3d at 61. Exhaustion is also not required when an administrative appeal would be futile. *Id.*, 430 S.W.3d at 61.

Rule 9(f) states in pertinent part that

(1) [i]f an applicable statute provides a method for filing an appeal from a final decision of any governmental body or agency and a method for preparing the record on appeal, then the statutory procedures shall apply.

(2) If no statute addresses how a party may take such an appeal or how the record shall be prepared, then the following procedures apply.

(A) *Notice of Appeal.* A party may appeal any final administrative decision by filing a notice of appeal with the clerk of the circuit court having jurisdiction of the matter within thirty (30) days from the date of that decision. The notice of appeal shall describe the final administrative decision being appealed and specify the date of that decision. The date of decision shall be either the date of the vote, if any, or the date that a written record of the vote is made. The party shall serve the notice of appeal on all other parties, including the governmental body or agency, by serving any person described in Arkansas Rule of Civil Procedure 4(d)(7), by any form of mail that requires a return receipt.

Here, an appeal to circuit court pursuant to Rule 9(f) was not required because MHBF is not a governmental body or an agency. MHBF relies on *Mountain Pure, LLC v. Little Rock Wastewater Utility*, 2011 Ark. 258, 383 S.W.3d 347, in which we stated that a party must appeal a decision by a "municipal body" pursuant to Rule 9. *Id.* at 7, 383 S.W.3d at 353. MHBF holds itself out as a trust, which is consistent with its description of itself in its policy booklet. Because MHBF is not a governmental or municipal body or an agency, we conclude that Rule 9 is inapplicable.

We are also unpersuaded by MHBF's argument that the circuit court lacked jurisdiction because other class members may not have exhausted their administrative remedies.[2] In its commonality analysis, the circuit court stated that Hendrix had exhausted his administrative remedies because MHBF denied his internal appeal. It further found that "because [MHBF] promulgates the same Policy exclusions with respect to all affected members, it would be futile for these individuals to attempt to exhaust their administrative remedies." We agree that exhaustion of administrative remedies by all class members would be futile in this case because the interpretation and enforceability of the two policy exclusions are common to all class members. Thus, we hold that the case is not subject to dismissal for lack of jurisdiction.

Affirmed.

---

[2]Contrary to the assertion in the concurring/dissenting opinion, we do address the failure to exhaust administrative remedies in this interlocutory appeal. In *Hotels.com*, we considered exhaustion of remedies as a jurisdictional issue in an interlocutory appeal from a class-certification order pursuant to Rule 2(a)(9) of the Arkansas Rules of Appellate Procedure–Civil. 2013 Ark. 392, at 7–11, 430 S.W.3d at 60–62. Our holding in *Hotels.com* was consistent with this court's settled caselaw treating the failure to exhaust administrative remedies as a jurisdictional issue. *See, e.g., Staton v. Am. Mfrs. Mut. Ins. Co.*, 362 Ark. 96, 100, 207 S.W.3d 456, 458 (2005) (holding that the circuit court lacked jurisdiction over a lawsuit where the plaintiff failed to exhaust her administrative remedies prior to filing a lawsuit in circuit court). Additionally, *Hotels.com* is consistent with our subsequent opinion, *Arkansas Department of Human Services v. Ledgerwood*, 2017 Ark. 308, at 17, 530 S.W.3d 336, 345–46, in which we analyzed exhaustion in an interlocutory appeal pursuant to Rule 2(a)(6)of the Arkansas Rules of Appellate Procedure–Civil from an order granting a motion for temporary restraining order.

Recently, in *Arkansas Department of Finance and Administration v. Carpenter Farms Medical Group, LLC*, 2020 Ark. 213, we held that the issue of exhaustion was not ripe in an interlocutory appeal about sovereign immunity. Our holding was expressly confined to sovereign-immunity appeals. *Id.* at 6 ("Only sovereign immunity is properly before this court under Arkansas Rule of Appellate Procedure–Civil 2(a)(10).").

HART, WOOD, and WOMACK, JJ., concur in part and dissent in part.

**RHONDA K. WOOD, Justice, concurring in part and dissenting in part.** I join the majority opinion except for Part II(B). I dissent from and would not address the failure-to-exhaust argument.[1] This term, we held failure to exhaust is not ripe in an interlocutory appeal about sovereign immunity.[2] The rule should apply equally in an interlocutory appeal from a class-certification order. No principle supports the position that failure to exhaust is jurisdictional in one but not the other; we must treat exhaustion as nonjurisdictional in both. I would address only whether the elements of Rule 23 have been met.

Exhaustion of remedies is nonjurisdictional for several reasons: (1) it is ill-suited for the court to address *sua sponte* and produces unfair results if so treated; (2) it concerns claim-processing rules, not the court's authority to hear and decide the subject matter; and (3) it involves judicial discretion and consideration of equitable principles. Because the failure of a party to pursue certain avenues of relief is unrelated to subject-matter jurisdiction, we should disregard our cases that imply otherwise.

First, consider this court's role if exhaustion truly implicates subject-matter jurisdiction. This court must, in every case, scour the record *sua sponte* to ensure the plaintiff exhausted its

---

[1]The majority appears to claim that this opinion asserts otherwise. "Contrary to the concurrence's assertion," it states, "we do address the failure to exhaust administrative remedies in this interlocutory appeal." Maj. Op., at 14 n.2. I make no such contrary assertion. Rather, I acknowledge the majority addresses failure to exhaust. I argue it should not, despite our erroneous caselaw. *See infra* pp. 4–5.

[2]*Ark. Dep't of Fin. & Admin. v. Carpenter Farms Med. Group, LLC*, 2020 Ark. 213, at 11.

remedies; then, even without factual development below, we must consider whether one of the numerous equitable exceptions to the doctrine applies. Appellate courts are ill-equipped for these fact-intensive inquiries, especially when the burden falls on the appellate court to independently raise and address the various arguments. This procedure also results in unfairness by depriving the parties of the opportunity to make arguments on a fully developed record. Not to mention, we give license to bad actors: a party can make "tardy jurisdictional objections that occasion wasted court resources and disturbingly disarm litigants."[3]

In fact, this court has not treated exhaustion as exclusively jurisdictional but rather has addressed it as a substantive doctrine.[4] Like the United States Supreme Court and other courts that considered the question, we should treat failure to exhaust as a nonjurisdictional issue to be raised, developed, and ruled on by a lower court. We can then address the issue upon a proper appeal from a final judgment.

Second, the exhaustion doctrine is logically described as a nonjurisdictional claim-processing rule. "[J]urisdictional is generally reserved for prescriptions delineating the classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)."[5] On the other hand,

---

[3]*Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up).

[4]*See Ahmad v. Beck*, 2016 Ark. 30, 480 S.W.3d 166 (disposing of case on substantive exhaustion-of-remedies doctrine as opposed to considering exhaustion as jurisdictional barrier).

[5]*Fort Bend*, 139 S. Ct. at 1848.

16

nonjurisdictional claim-processing rules require a plaintiff to "take certain procedural steps at certain specified times."[6] Exhaustion is a claim-processing rule. It merely requires a plaintiff to take certain steps before filing suit in circuit court. The doctrine does not implicate a court's subject-matter jurisdiction.[7]

Rather, subject-matter jurisdiction is a court's authority to hear and decide a particular type of case.[8] A court lacks subject-matter jurisdiction when it cannot hear a matter under any circumstance and is wholly incompetent to grant the relief sought.[9] Presently, there is no dispute that the circuit court can grant the relief sought; upon a proper showing, it can award damages for Hendrix's claim and grant injunctive relief. The Fund argues only that Hendrix failed to take certain steps before filing suit. Thus, the Fund really argues that Hendrix did not follow a nonjurisdictional claim-processing rule, not that the circuit court lacked subject-matter jurisdiction over the complaint.

Last, unlike other issues involving subject-matter jurisdiction, exhaustion ultimately depends on judicial discretion. Exhaustion is subject to numerous equitable exceptions and is not required when futile, when no adequate relief exists, or when irreparable injury will

---

[6]*Id.* at 1849.

[7]*See, e.g., United States v. Alam*, No. 20-1298, slip op. at 3 (6th Cir. June 2, 2020) (holding that failure to exhaust did not deprive court of subject-matter jurisdiction); *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007) ("The exhaustion requirement is a nonjurisdictional affirmative defense.").

[8]*Tripcony v. Ark. Sch. for the Deaf*, 2012 Ark. 188, at 4, 403 S.W.3d 559, 561.

[9]*Id.*

result.[10] In other words, a court can excuse a failure to exhaust when the circumstances warrant. The same cannot be said when a court lacks subject-matter jurisdiction. In that scenario, a court must employ "harsh consequences" and dismiss the suit without addressing equitable considerations.[11]

I recognize this court has said that failure to exhaust deprives the circuit court of jurisdiction.[12] But this view receives no favor elsewhere. The U.S. Supreme Court has made a general observation that exhaustion is an affirmative defense.[13] It appears we first thought otherwise by "agree[ing]" with an appellant that appellee's failure to exhaust deprived the trial court of "jurisdiction."[14] Presumably we meant subject-matter jurisdiction. But the opinion presents no other detail and otherwise fails to explain if the label "jurisdiction" was deliberate. This misnomer has since been quoted in subsequent cases without further development.[15] When a legal doctrine is patently wrong, this court must correct it.

---

[10] *See Ark. Dep't of Human Servs. v. Ledgerwood*, 2017 Ark. 308, at 14, 530 S.W.3d 336, 345–46.

[11] *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015).

[12] *See Old Republic Sur. Co. v. McGhee*, 360 Ark. 562, 203 S.W.3d 94 (2005).

[13] *See Jones v. Bock*, 549 U.S. 199, 212 (2007).

[14] *Old Republic*, 360 Ark. at 566, 203 S.W.3d at 97.

[15] *See, e.g., Staton v. Am. Mfrs. Mut. Ins. Co.*, 362 Ark. 96, 100, 207 S.W.3d 456, 458 (2005) ("[U]nder the reasoning of *Old Republic*, this court must hold that the trial court lacked jurisdiction over the suit."); *Ark. Dep't of Health & Human Servs. v. Smith*, 370 Ark. 490, 262 S.W.3d 167 (2007); *Hotels.com, L.P. v. Pine Bluff Advert. & Promotion Comm'n*, 2013 Ark. 392, 430 S.W.3d 56.

I have noted elsewhere that "courts have been less than meticulous in their use of the term jurisdictional."[16] The U.S. Supreme Court itself has tried to correct careless "jurisdictional rulings, which too easily can miss the critical differences between true jurisdictional conditions and nonjurisdictional limitations on causes of action."[17] This court has not heeded the Supreme Court's warning. Exhaustion's elevation to a jurisdictional condition was less than assiduous, and, given the opportunity now, we should abandon that view.

HART and WOMACK, JJ., join.

*Harrington, Miller, Kieklak, Eichmann & Brown, P.A.*, by:  *R. Justin Eichmann*; and *Asia Cruz*, for appellant.

*Streett Law Firm, P.A.*, by:  *James A. Streett*; and *Brian G. Brooks, Attorney at Law, PLLC*, by:  *Brian G. Brooks*, for appellee.

---

[16]*Mann v. Pierce*, 2016 Ark. 418, at 15, 505 S.W.3d 150, 158 (Wood, J., concurring); *Bradley v. State*, 2015 Ark. 144, at 7, 459 S.W.3d 302, 306 (Wood, J., dissenting).

[17]*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (cleaned up).